OPINION

This case is an appeal of a Resources Committee decision concerning a grazing dispute heard prior to the Navajo Nation Council’s delegation of authority to the Office of Hearing and Appeals (OHA) on such matters. The Court remands the case to the OHA for final disposition.
I
The matter before the Court is a long standing grazing dispute between parties who are descendants of the late Chala Bidaghaa of the Burnham community. The parties’ dispute first came under review of the District 13 Grazing Committee (Grazing Committee) on October 20, 1989 in a hearing where Appellant Irene Thomas (aka Irene Benally) was the only disputing party present. Appellants, who share a permit for the grazing area designated as “.0389” asserted grazing rights over another area designated as “.0390” and held by Appellees. The Grazing Committee recommended[1] that the parties remain within their own designated grazing area, that the fencing requested by Irene Thomas be constructed along the established grazing lines already in existence, and that a cattle guard requested by Irene Thomas be installed to prevent livestock from entering each other’s designated area. Grazing Committee Resolution (February 1, 1989[2]).
On June 25, 1998 and March 5, 1999 respectively, Appellees filed two complaints with the Grazing Committee requesting the Committee to reaffirm its resolution of February 1, 1990. The first complaint alleged Appellants had buried a deceased family member in grazing area .0390 without their permission. The second complaint alleged Appellant David Be-nally was grazing his livestock in .0390, which caused the area to become overgrazed. The Grazing Committee referred both complaints to the then final arbiter, the Resources Committee of the Navajo Nation Council (Resources Committee), after the parties were not able to amicably resolve their differences on July 7, 1999,
The Resources Committee considered the dispute and rendered a verbal decision on February 21, 2001; the record is not clear whether a hearing was held with all parties present. Thereafter, the Committee’s Chairman Pro Tern in a letter dated March 1, 2001 instructed the parties to *649 refrain from trespassing onto each other’s grazing area, enjoined the parties from burying their- deceased family members within the disputed area, and specified that the two grazing areas be divided by the construction of a fence along boundaries identified by the White Rock El Paso Project. The parties were further informed that the Resources Committee would “render its decision in resolution form within 30 days” from the date of the hearing. Despite these unequivocal statements, no resolution was issued immediately thereafter.
In 2006 Appellee Fannie Looking Glass made inquiries with the Navajo Nation Land Department as to why a written resolution had not yet been issued by the Resources Committee of the 20th Navajo Nation Council; she was referred to OHA. The OHA attempted to address the matter under OHA-LD-001-06 [3] and sought the advice of the Office of Legislative Counsel as to the status of the matter. Legislative Counsel advised the Resources Committee of the 21st Navajo Nation Council that it is in the best interest of the parties to have the Committee issue its decision in resolution format so it may be appealed by the parties, if desired. On April 12, 2007, the Resources Committee called a meeting and thereafter affirmed and memorialized the “verbal decision” of February 21, 2001 in Resolution RCAP-21-07. The decision, as evidenced by the minutes of the Committee, instructed the parties to not trespass on each other’s property, not bury their deceased on the disputed property, each use their grazing permits only on their assigned grazing area, and that the boundary between the two grazing areas will be fenced as identified by the map generated by the White Rock El Paso Project.
Upon learning of the Resources Committee’s disposition, the OHA in a letter dated April 17, 2007 notified the parties that the matter was resolved, case file OHA-LD-001-06 was closed, and no further action was necessary. On May 11, 2007, Appellants filed a Notice of Appeal challenging Resolution RCAP-21-07. The Appellants contend that the Resources Committee’s final decision—merely affirming a verbal decision—should be voided because there are no findings of facts and conclusions of law for a meaningful appellate review and the OHA should not have removed itself from hearing the matter. Appellees, on the other hand, assert this Court lacks jurisdiction because Appellants failed to comply with Rule 7(a) of the Navajo Rules of Civil Appellate Procedure (NRCAP) which requires a certified copy of the final decision upon filing an appeal. A hearing was held by this Court in Shi-prock on July 29, 2008.
II
The issues are 1) whether the affidavits accompanying the Resources Committee’s decision meets the certification requirement of Rule 7(a) of the Navajo Rules of Civil Appellate Procedure for this Court to assume jurisdiction; and 2) whether the Office of Hearing and Appeals has jurisdiction to hear and decide a grazing dispute which predates Navajo Nation Council Resolution CO-59-03.
III
Appellees contend that Appellants’ appeal is fatally defective because it does not meet the filing requirement of Rule 7(a) of the Navajo Rules of Civil Appellate Procedure. Rule 7(a) requires a “certified copy” of the final judgment being appeal *650 ed. Appellants filed a Notice of Appeal on May 11, 2007 attaching: a copy of the Resolution RCAP-21-07, an affidavit from the Legislative Reporter for the Resources Committee executed May 4, 2007, and the letter dated April 17, 2007 from OHA to the disputing parties. Appellees argue that Resolution RCAP-21-07 with an affidavit from the Legislative Reporter, the custodian of record, is not a duly certified copy of the decision and accordingly, the matter should be dismissed. Specifically, Appellees argue Resolution RCAP-21-07 does not contain the signature of the custodian of records on the copy itself, and the attestation fails to specify that the attached copy of Resolution RCAP-21 -07 is a true copy of the record.
In response, Appellants argue that the Office of Legislative Services does not have and does not utilize a certification stamp, like those used by Navajo Nation Courts, for authenticating its resolutions. For this reason, Appellants had the custodian of the records from the Office of Legislative Services execute two notarized affidavits to serve as a substitute. The first affidavit, filed with the Notice of Appeal, declared that the Legislative Reporter is the custodian of records, all meetings are recorded, and to the best of her knowledge Resolution RCAP-21-07 was approved by the Resources Committee on April 12, 2007. The second affidavit, subsequently filed with the Notice of Filing of Transcript, declared that the Resources Committee meeting excerpt for April 12, 2001, with Resolution RCAP-21-07, is a true and correct copy. Under these circumstances, this Court now considers what is meant by “certified” and what form of certification is acceptable to this Court.
It is common knowledge that in the Navajo Nation government, disputes are handled by Navajo Nation Courts, Office of Hearing and Appeals, Navajo Nation Labor Commission, and certain quasi-judicial hearing bodies like the Resources Committee. These bodies do not have a uniform system of “certifying” documents. The Office of Legislative Services, for instance, does not regularly use a stamp for authentication. Rule 7(a) does not take this into account. Because these quasi-judicial bodies are statutorily authorized to hear cases, our Court rules must accommodate.
Rule 7(a) requires at the time of filing: 1) a Notice of Appeal with 2) an attached certified copy of the judgment being appealed and 3) the filing fee paid. In LeCompte v. Redimir, 7 Nav. R. 307, 1 Am. Tribal Law 479, 1997 WL 34676520 (1997), this Court clarified that a “certified copy” meant
a copy (normally photocopied) of a document signed by the clerk under whose custody the record is kept attesting to it as a true copy. The clerk’s original signature or marking must be on the copy itself. A copy of the clerk’s signature and certification (copy of certification) will not suffice.
LeCompte v. Redimir, 7 Nav. R. 307, 309, 1 Am. Tribal Law 479, 1997 WL 34676520 (Nav.Sup.Ct.1997). Furthermore, our Court rules provide some guidance on other ways to properly certify a document. Rule 9(g) of NRCAP, which contemplates an affidavit certifying an attached document (certification attached to portion of the trial record for a preliminary hearing), requires the certification must state “the attached portions are true copies of the district court or administrative record.” Rule 31(d) of the Navajo Rules of Evidence also mentions certification of public records. Rule 31(d) states “[t]he contents of an official record ... may be proved by copy, certified as correct ... by a witness who has compared it with the original.”
*651 In this case, the Resources Committee took action through a Resolution RCAP-21-07 and the action was attested to by the Legislative Reporter through signed affidavits—made under oath—verifying that to the best of her knowledge the copy was a true copy. Clearly, the end and not the means of authentication is decisive where the staff of a quasi-judicial body (which has not heard a dispute in over five years) attempts to certify a resolution in good faith facilitating the Committee’s intent to provide the parties appellate relief. The Court holds that the affidavits by the custodian in this matter are sufficient to meet the certification requirement of Rule 7(a). This matter is properly before this Court.
IV
This dispute started when grazing disputes, initially heard by the Grazing Committee for the purpose of mediation, were referred to the Resources Committee empowered, at that time, to act as the Central Grazing Committee (the final administrative arbiter in land disputes). In 2003, this hearing system was repealed by the enactment of Navajo Nation Council Resolution CO-59-03 (October 31, 2003). Resolution C0-59-03 amended 2 N.N.C § 695, the authority of the Resources Committee, by delegating to the Office of Hearing and Appeals (OHA) the authority to resolve all grazing, land, and fencing disputes, except those appeals pending an official decision by the Resources Committee. Thereafter, the Resources Committee no longer heard grazing disputes; this responsibility was transferred to OHA. The OHA is now the hearing body for disputes; it makes decisions via findings of fact and conclusions of law.
The Court understands that this longstanding dispute began with Chala Bida-ghaa, a common ancestor of both parties, who initially divided his grazing area between his descendants. Unfortunately, the descendants turned the benevolence of the ancestor into a dispute which has greatly impacted all of them for so long. There continues a live dispute causing the parties to be deprived of modern conveniences that other Navajo families enjoy. The intransigence of the parties has been exacerbated by the Navajo Nation governmental hearing system that failed to properly and diligently address the issues for the parties. This situation was worsened by the Resources Committee’s failure to follow through with a final decision in resolution form as promised in the Committee’s letter of March 1, 2001. The final decision, Resolution RCAP-21-07, that followed seven years later at the insistence of the parties unfortunately does not contain the necessary information to conduct an appellate review. The absence of findings of fact and conclusions of law makes an appellate review very difficult, if not impossible. There is no clear explanation of the reasons why the Resources Committee decided the way it did on February 21, 2001 and the Court cannot glean the basis for the Committee’s conclusions from the submitted record, to wit: the minutes of the February 21, 2001 hearing, the March 1, 2001 letter, and Resolution RCAP-21-07.
Normally, this Court reviews the findings of fact and conclusions of law contained in the final judgment to determine whether any legal errors were made or whether the decision should be upheld. Findings of fact and conclusions of law by the trial courts are required by this Court and matters will be remanded when this requirement is not complied with. See Help v. Silvers, 4 Nav. R 46, 47 (Nav.Ct.App.1983) and Navajo Transport Services v. Schroeder, No. SC-CV-44-06, 7 Am. Tribal Law 516, 518-19, 2007 WL 5886684 at *2-3 (Nav.Sup.Ct.2007). Meaningful ju *652 dicial review also cannot occur if the lower quasi-judicial tribunal does not provide reasons why it decided a certain way and not another. The record in this matter is woefully inadequate to conduct a meaningful review.
The Court holds the OHA has jurisdiction to hear and decide a grazing dispute which predates Navajo Nation Council Resolution CO-59-03 where an official decision is inadequate to conduct an appellate review. The OHA has the expertise for conducting hearings and the means to provide an expeditious mechanism to resolve such disputes. Thus, the OHA’s refusal to hear this matter is hereby vacated.
y
Based on the above, this Court REMANDS this case to the Office of Hearing and Appeals with instructions to conduct a hearing and enter findings of fact and conclusions of law as to the boundaries of the grazing areas and construction of a fence.

. Although the District 13 Resolution ‘'directed" certain actions, the authority of the District Grazing Committee is limited to that of mediator. In re Joe Customary Use Area, 6 Nav. R. 177, 179(1990).

. The parties agree the date is incorrect and should be noted as February I, i 990.

. In Re: The Land dispute of Johnny Charley and Fannie Looking Glass, el. al. v. Irene Thomas aka Irene Benally, Office of Hearing and Appeals Cause No. OHA-LD-001-06.