*NAVAJO HOUSING AUTHORITY*
Petitioner-Appellee
*vs.*
*BLUFFVIEW RESIDENT MANAGEMENT CORPORATION,*
*Board of Directors,* et al.
Respondents-Appellants

In the Supreme Court of the Navajo Nation

No. SC-CV-35-00

December 17, 2003

Anthony Little, Esq., Albuquerque, New Mexico, for Appellants.

Martin Avery, Esq., Window Rock, Arizona, for Appellee.

Before BATES ARTHUR, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by BATES ARTHUR, Chief Justice.

This is an appeal from an order of the Crownpoint District Court which dissolved a temporary restraining order and dismissed counterclaims. We vacate in part the district court's order.

## I

Petitioner-Appellee Navajo Housing Authority (NHA) is a public body created by the Navajo Nation Council with authority to manage and operate housing development projects for low income tenants and homeowners. It constructed and managed housing units in the Bluffview Village and Sky Mesa Housing Projects (projects), which consist of Public Rental and Mutual Help Homeownership units.

Respondents-Appellants are the board of directors and individual members of the board for the Bluffview Resident Management Corporation (Bluffview). Bluffview is a non-profit corporation organized under Navajo Nation law for the purpose of managing the Projects.

Bluffview entered into a management contract with NHA to assume NHA's responsibilities over the Projects, Paragraph E(1) of the contract authorizes NHA to terminate the contract "for Cause" upon prior written notice, and sets out the grounds authorizing termination. Paragraphs E(1)(c), E(3) and M(3) state that upon termination Bluffview must turn over all funds, records, financial documents, and property acquired during the contract to NHA. Paragraph F(1) states that in the event of a dispute under the contract Bluffview should notify NHA, and that NHA will meet with it to attempt to settle the issue.

On April 26, 1999 NHA terminated the contract purportedly because Bluffview failed to perform its responsibilities as set forth in the contract. In its termination letter NHA demanded the surrender of all property held by Bluffview refused to turn over the property and continued to manage the Projects. Bluffview' s board president requested a meeting between the parties under Paragraph F(1) of the contract.

On May 10, 1999 NHA filed a Petition for Ex Parte Temporary Restraining Order and Preliminary Injunction and Permanent Injunction with the Crownpoint District Court, alleging Bluffview lacked the authority to continue to manage the Projects after the termination of the contract. It prepared and submitted temporary restraining orders against each board member which required four things: (1) that all individuals associated with Bluffview vacate a housing unit it occupied as its management office, (2) that the Bluffview board refrain from damaging, removing, or destroying certain property, (3) that the Bluffview board "cooperate" with NHA and release all funds, documents, papers,

files, vehicles, office equipment and other property to NHA, and (4) that the board members appear at a preliminary injunction hearing on June 17, 1999. The orders also stated that any "requests" by Bluffview should be in writing and filed with the court. The district court issued the orders submitted by NHA the same day ex parte under Rule 65.l(c) of the Navajo Rules of Civil Procedure (Nav. R. Civ. P.). The Bluffview board complied with those orders, vacating the housing unit and turning over the requested property prior to the preliminary injunction hearing.

The temporary restraining orders remained in place throughout the proceedings, Bluffview responded to the petition by filing an answer and counterclaims on June 16, 1999, one day before the preliminary injunction hearing. The counterclaims alleged three causes of action: (1) breach of contract, {2) breach of the covenant of good faith and fair dealings, and (3) misrepresentation. Bluffview sought resumption of the contract and/or damages. At the injunction hearing the parties agreed to continue the case so that they could attempt to mediate the dispute. The restraining orders remained in effect.

NHA filed several motions during the continuance. NHA filed a motion to strike the answer and dismiss the counterclaims on the grounds that NHA is immune from suit and that Bluffview failed to file its answer and counterclaims within the thirty day period required by Nav. R. Civ. P. 12(a). The court delayed consideration of that motion to allow time for mediation. The court continued the case for almost a year while the parties attempted to resolve the dispute. Finally, on May 18, 2000, NHA filed a motion to dissolve the restraining orders under Nav. R. Civ. P. 65(g). In that motion NHA renewed its request that the court strike the answer and dismiss the counterclaims. Bluffview did not respond to the motion.

The Crownpoint District Court granted NHA's motion without a hearing. It dissolved the restraining orders under Rule 65(g) because, according to the court, their purpose had been accomplished, as NHA now had control of the Projects. It also dismissed the counterclaims on the grounds of sovereign immunity and untimely filing. This appeal followed.

## II

The issues in this case are (1) whether the district court abused its discretion by dissolving a preliminary injunction without a hearing, when it previously had granted mandatory injunctive relief in a temporary restraining order that effectively disposed of the merits of the case; and (2) whether the district court abused its discretion when it dismissed counterclaims on grounds that the NHA was immune from suit and that the counterclaims were untimely.

## III

Bluffview argues that the Crownpoint District Court improperly dissolved

the temporary restraining orders (TRO)[1] without a hearing. We review the dissolution of an injunction under an abuse of discretion standard. 42 Am. Jur. 2d *Injunctions* §333. "Discretion" means the discretion to act within certain boundaries of rules, principles and customs applied to facts of the case. *PacifiCorp v. Mobil Oil Corporation*, 8 Nav. R. 378, 386 (Nav. Sup. Ct. 2003). In other words, a court abuses its discretion by unreasonable conduct that is "capricious and arbitrary." *Id.* Though the court ultimately has discretion, we review the underlying factual findings for clear error and the legal conclusions *de novo. Manning v. School Bd. of Hillsborough County*, 244 F.3d 927, 940 (11th Cir. 2001).[2] An erroneous application of law is an abuse of discretion *Northern Alaska Environmental Center v. Lujan*, 961 F.2d 886, 888 (9th Cir. 1992). A discretionary ruling is presumptively correct and the party seeking reversal has the burden to show the abuse of discretion. *PacifiCorp*, 8 Nav. R. at 386. To decide whether the district court abused its discretion, we first examine the grant of the TRO to NHA.

A

There are two types of injunctive relief: (1) prohibitory and (2) mandatory. 42 Am. Jur. 2d *Injunctions* §§ 4, 5 (1995). Most injunctions are prohibitory, as they stop a party from acting in some way. *Id.*, §4. A mandatory injunction requires a party to affirmatively act by commanding the party to do something. *Id.*, §5; *Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 35 (2nd Cir. 1995). While an injunction is generally an extraordinary remedy, mandatory injunctive relief is particularly disfavored, and should be granted only when the movant shows a clear right to such relief. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979).

A TRO maintains the status the parties held before the current lawsuit was filed. 42 Am. Jur. 2d *Injunctions* § 7 (1995). It holds the parties to their respective positions until a hearing can be held on a preliminary injunction. Nav. R. Civ. P. 65.1(a). By definition, mandatory injunctive relief cannot be granted in a TRO, as the purpose of the TRO is to maintain the status quo, not to alter it by requiring affirmative action. *See Tom Doherty Assoc.*, 60 F.3d at 35 ("A mandatory injunction ... alter[s] the status quo by commanding some positive act."). Once the court orders a party to act, instead of freezing the situation to the pre-suit status, it has gone beyond its authority to issue a TRO.[3]

Here the TRO granted both prohibitory and mandatory relief. It ordered

[1] As the district court issued identical TROs to each defendant board member, we refer to the collective TROs as "the TRO" for clarity.

[2] In the absence of Navajo law on the subject, we may look to federal law as persuasive authority. 7 N.N.C. §204 (1995).

[3] There are certain kinds of commands in an injunction that are in fact prohibitory instead of mandatory. An example is where a party removes or damages property after the lawsuit has commenced and the court orders it to return the property to the place or condition it was in at the point before the suit.

the defendants not to remove or destroy documents and other property related to the management of the housing units ("Property"). It also affirmatively ordered the defendants to vacate the housing unit it occupied and turn over all the Property to NHA. By doing so the court effectively granted NHA's claims on the merits that it properly terminated the contract and appropriately demanded that Bluffview vacate the unit and turn over the Property. The court improperly granted that portion of the TRO. The court should have reviewed the TRO submitted by NHA and delayed consideration of mandatory relief until a preliminary injunction hearing. Instead, it wrongly granted mandatory relief at the TRO stage. We view the dismissal of the TRO in light of the previous erroneous order to vacate the unit and surrender the Property to NHA.[4]

## B

Bluffview argues that the court should have held a hearing on the dissolution of the TRO under Nav. R. Civ. P. 65(g). Under that rule

> [m]otions to dissolve or modify a preliminary injunction without determining the merits of the action may be heard after an answer is filed, upon notice to the adverse party. If upon hearing the motion, it appears there is not sufficient grounds for the injunction, it shall be dissolved, or if it appears that the injunction is too broad, it shall be modified.

Bluffview argues that the rule requires a hearing because of the use of "upon hearing the motion," and that failure to follow the rule was a violation of due process. Under this analysis, Nav. R. Civ. P. 65(g) is a specific exception to the general discretion granted to district courts in Nav. R. Civ. P. 7(c)(3) whether or not to hold a hearing on a motion. For purposes of this discussion, we will treat the TRO as a preliminary injunction, though the district court never explicitly converted it into a preliminary injunction.

NHA argues that Nav. R. Civ. P. 65(g) does not apply to situations where the recipient of the preliminary injunction moves to dissolve it. Though unusual, it is not surprising that NHA sought to dissolve its own injunction in this case, as the improper order to vacate the unit and turn over the property under the TRO granted the full relief it sought in its petition: resumption of control over management of the housing units. As the court wrongly granted the property to NHA in the TRO stage, as discussed above, we hold that the district court should have held a hearing before dissolving the injunction. Had the court heard the matter, it might have only dissolved that portion of the order that required Bluffview to vacate the unit and turn over the property, under its authority in Nav. R. Civ. P. 65(g) to modify the injunction. It also could have ordered that the Property be held in safe keeping by a neutral party until it decided the merits. Instead, it fully granted the motion to dissolve, with the effect of a second

---

4 Bluffview does not allege that the district court wrongly granted the TRO. However the grant of the TRO is relevant to whether the court erroneously dissolved it without a hearing. We therefore consider the appropriateness of the original grant of the TRO to preface our discussion of its dissolution.

ruling for NHA on the merits of its claim without a hearing. Bluffview had no opportunity to request that the court reverse its previous error,[5] and NHA received all it asked for through the improper use of the TRO.

This situation shows why hearings are sometimes necessary even when the recipient seeks to dissolve its own injunction. We decline to hold that a hearing is always required under Nav. R. Civ. P. 65(g) when the recipient seeks to dissolve the injunction, as there may be situations not before us here where a hearing is unnecessary. However, where the erroneous transfer of property under the TRO effectively disposed of the merits of the case, the court should have held a hearing before the temporary merits ruling became permanent.

Reading Nav. R. Civ. P. 65(g) to require a hearing under these facts is consistent with fundamental rights of due process under the Navajo Common Law principle of *k'é*. *See* Navajo Nation Council Resolution No. CN-69-02, § 6(A) (November 8, 2002) (amending Title 1 of the Navajo Nation Code to recognize the Fundamental Laws of the *Diné*) ("[T]he written laws of the Navajo Nation must be ...interpreted in harmony with *Diné* Common Law[.]"); *Reservation Business Services v. Albert*, 7 Nav. R. 227, 229-30 (Nav. Sup. Ct. 1996) (discussing foundations of Navajo due process under principle of *k'é*); *Begay v. Navajo Nation*, 6 Nav. R. 20, 24-25 (Nav. Sup. Ct. 1988) ("The heart of Navajo due process... is notice and an opportunity to present and defend a position."). The district court therefore abused its discretion.

## IV

Bluffview also argues that the district court abused its discretion when it dismissed its counterclaims. NHA did not cite a rule authorizing dismissal in its motion to the district court. The district court did not cite a rule when it dismissed the counterclaims. We assume, for purposes of discussion, that it was under Nav. R. Civ. P. 39(b), which authorizes involuntary dismissals of claims. The district court gave two reasons: (1) NHA is immune from suit under the Navajo Sovereign Immunity Act, and (2) the counterclaims were untimely.[6] We address each reason in turn.

5 NHA argues that Bluffview waived any right to a hearing by not responding to the motions to dissolve the injunction and dismiss the counterclaims. Our rules, unlike some local rules in the federal courts, do not state that failure to respond to a motion is an implicit admission that the motion should be granted. As the court wrongly ordered that Bluffview vacate the unit and turn over the property in the TRO, we believe it should have held a hearing before it dissolved the TRO whether or not Bluffview specifically objected to the motion.

6 NHA makes no arguments concerning the merits of the dismissal of the counterclaims in its appellate brief. Instead, it claims that the district court dismissed Bluffview's counterclaims because it failed to respond to the motion to dismiss. A cursory review of the district court's order shows it did not dismiss them for that reason, but for sovereign immunity and untimely filing. Absent any substantive arguments by NHA we will proceed to review the trial court's decision based on the reasons given on the face of the order.

## A

The trial court concluded that NHA is protected from suit by the Navajo Sovereign Immunity Act, 1 N.N.C. § 551 *et seq.* The trial court has no discretion and must dismiss counterclaims if the defendant has sovereign immunity from suit. We review the trial court's legal conclusions *de novo.*

NHA is not considered the "Navajo Nation" in the Act, but instead its immunity is covered by a separate section of the Navajo Nation Code directly related to NHA, 6 N.N.C. § 616(b)(1). In that section NHA can sue and be sued on contract claims:

> The Navajo Tribe gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities, the Authority to agree by contract to waive any immunity from suit which the Navajo Housing Authority might otherwise have[.]

*Id.* Under this section, NHA is required to waive its immunity from suits in any agreement with another party. Even when NHA fails to do so, it lacks immunity under the clear language of Section 616(b)(1), *Navajo Housing Authority v. Dana,* 5 Nav. R. 157, 159 (Nav. Sup. Ct. 1987); *see also Indian Construction Services v. Navajo Housing Authority,* 6 Nav. R. 502, 503 (W. R. Dist. Ct. 1989). Consequently, NHA possesses no immunity from the counterclaims by Bluffview,[7] and the district court erred when it dismissed the counterclaims for that reason.

## B

The trial court also justified its dismissal of Bluffview's counterclaims by ruling that they were untimely filed. A district court has discretion to dismiss a claim for failure to comply with the Navajo Rules of Civil Procedure. Nav. R. Civ. P. 39(b). We review the dismissal of Bluffview's counterclaims for an abuse of discretion. As we review the legal conclusions underlying discretionary decisions *de novo, supra* at 4, we will find an abuse of discretion if the district court misinterpreted our rules. The question is whether Bluffview was required to file its answer and counterclaims within the thirty day time period mandated by Nav. R. Civ. P. 12(a). Rule 12(a) states that "[a] defendant shall serve and file an answer within 30 days after being served with the summons and complaint."

It was inappropriate for the district court to apply Nav. R. Civ. P. 12(a) in this case because of the nature of NHA's pleadings. NHA did not file a complaint for injunctive relief, but a Petition for a Temporary Restraining Order and a Preliminary and Permanent Injunction. It did not serve a summons with the petition, but served the ex parte TRO on the defendants. The TRO did not give a

---

7  Bluffview asserts three counterclaims:( 1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (2) misrepresentation. All three causes of action, including those sounding in tort, clearly arise out of the contractual relationship between NHA and Bluffview and fall within the waiver in 6 N.N.C. §616(b)(1).

time period in which to respond to the petition, but stated that each defendant had to appear on June 17, 1999 and that any "request" had to be "in written form and filed with [the] [c]ourt." TRO at pg. 2. Apparently as their "request," the defendants submitted an answer and counterclaims one day before the preliminary injunction hearing.

It was an abuse of discretion to dismiss the counterclaims under Nav. R. Civ. P. 12(a), as the thirty day rule only applies when a summons and complaint have been issued. Here, there was no summons alerting the defendants that they had to respond within thirty days. Instead the TRO was issued, stating only that defendants had to appear at the hearing on the preliminary injunction, and that they could submit a written "request" to the court. The answer and counterclaim responded to the merits of the preliminary injunction and will be considered their "request." Consequently, the answer and counterclaim were timely made.

## V

The Crownpoint District Court abused its discretion when it dissolved the temporary restraining order without granting Bluffview a hearing. It also abused its discretion when it ruled that Bluffview's counterclaims were barred by sovereign immunity and untimely filing. The final question is what relief is appropriate?

Reversal of the dissolution of the TRO would not be appropriate in this case. Error in vacating the unit and returning the property to the control of NHA cannot be undone four years after it occurred. There are settled expectations of the parties and the tenants and owners of the housing units precluding turning back the clock. Therefore, though there was an abuse of discretion by not granting a hearing on whether to dissolve the TRO, we will not disturb that ruling.

The ruling dismissing the counterclaims should be vacated. On remand, the district court should consider Bluffview's three claims for money damages against NHA.

The order of the Crownpoint District Court is VACATED IN PART REMANDED for proceedings consistent with this opinion.